(b) If Ponsoldt and Statesman are allowed to consummate their scheme as alleged herein, they could receive in excess of $28.5 million as a result of the completion of their fraudulent scheme.

## DISCOVERY OF FRAUDULENT SCHEME

## AND DEMAND MADE ON BOARD OF DIRECTORS

44. On or about December 4, 2000, Plaintiff Graham and Larry Horbach submitted data and raised questions concerning Ponsoldt's conduct that relates to the pending Securities and Exchange Commission investigation at a Board of Directors meeting in Denver, Colorado.

45. On September 9, 2001, Kelly, the former Acting CEO and a director nominated by Ponsoldt and Statesman in July 1993, wrote a letter to the other members of the Regency Board of Directors, including Defendants Baldinger, Carey, Craffey, Ponsoldt Jr., and Ponsoldt, stating:

- "At our most recent Board meeting, I requested a copy of the revised minutes of the December 3 & 4, 2000 meeting. Based on that assurance, I approved the minutes. To date I have not received these minutes nor a copy of any of the minutes of subsequent meetings. I would again like to request those minutes."

- "I am forwarding, for your information, a copy of the SEC adopted rules for audit committees with the composition and qualifications for each member; you will note the bullet areas on page 68. Due to these rules, Mark Baldinger is precluded from being a member of the audit committee as he is our new CFO. In addition, Stephanie Carey should not be on the audit committee due to her relationship with Statesman."

- "At our December Board meeting in Denver, the Board approved securing the bonus for William Ponsoldt, Sr. with Glas Aire Stock. I admit that I am not clear on the intricacies of actions and feel that there must be a conflict of interest. I abstained from voting on that resolution. If and when, the Glas Aire redemption is complete, all four million shares of stock should be returned to Regency."

- "With the potential of the Glas Aire redemption, I am concerned that there will be some sort of dilution in value for the shareholders. One

> question I have, if this redemption is accomplished, will Ponsoldt's bonus be the first bill paid and leave us without funds to complete further acquisitions?"

- "Another question is directed toward old business – Regency issued a check to Ponsoldt to reimburse him for retaining the law firm of Dickstein, Shapiro, Morin & Oshinsky, LLP for $25,000.00. It is my understanding that those monies were a retainer for Ponsoldt personally and not Regency. Has that money been returned to Regency?"

46.   Kelly never received a formal response from the September 9, 2001 letter, and on October 17, 2001, Kelly authored the following letter to the other members of the Regency Board of Directors:

- "Numerous significant activities have occurred by the management of Regency, which preclude the normal fiduciary functioning of the Board of Director's [sic]."

- "In the past, the Board was asked to review the 10-K's and 10-Q's prior to being asked to sign them. In the last ten months, these documents were filed with the SEC and made available to the shareholders without signature or approval of the entire Board of Directors."

- "Yesterday, an 8-K was issued announcing the disposition of Regency's interests from Glas-Aire. It stated that the companies both had independent fairness opinions which were not provided to the entire Regency Board. This director saw no documentation of this 'fairness opinion.'"

- "Previously, the CEO of Glas-Aire a subsidiary of Regency was fired without Regency's Board being apprised of the action or why it was done. Normally, such a significant action would have been discussed with the Board of Directors for a subsidiary company, as Regency's Board is ultimately responsible."

- "The most recent meeting of Regency's Board was designed and structured to prevent the attendance of the two independent members. In reviewing the correspondence for previous meetings there was always at least a week's notification prior to even a teleconference Board meeting. For this meeting, an extensive agenda was faxed with no backup documentation for the Board to review."

- "I have received the recent request for signature approving the minutes for the meetings of December 3 & 4, 2000, May 25, 2001 and June 13, 2001, I am unable to sign these documents as they contain changes, additions and errors."

- "In my memorandum's [sic] to the Board of January 21, 2002, July 8, 2001 and September 9, 2001, I have requested changes to minutes due to inaccuracies and pointed out SEC compliance issues, specifically the Audit Committee as well as issues pertinent to shareholders. I have consistently requested more communications from management and more frequent board meetings. None have been forthcoming."

- "Management has initiated significant changes which affect the interests of the shareholders without Board knowledge or approval and I feel unable to adequately perform my responsibility as a Board member."

- "Therefore, effective this date I am resigning from the Regency Board of Directors. This resignation is due to the above reasons and therefore should be reported in an 8-K."

## COUNT I

### (RICO – VIOLATION OF 18 U.S.C. § 1962(b))

47. Plaintiffs, individually, and as Class representatives of the Class repeat the allegations of paragraph 1 through 46 as if fully set forth herein.

48. Plaintiffs are "persons" as defined by 18 U.S.C. §§ 1961(3) and 1964(b).

49. Defendants Ponsoldt and Statesman are each a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(b).

50. Regency is an "enterprise" as defined by 18 U.S.C. §§ 1961(4) and 1962(c).

51. Defendants, acting with the specific intent associated with the commission of mail fraud and wire fraud, through a pattern of racketeering activity more particularly described herein, acquired or maintained an interest in or control of Regency in transactions affecting interstate or foreign commerce resulting in injury to Plaintiffs' (both individually and as

representatives of the Class) business or property by reason of Defendants' acquisition or maintenance of the interest in, or control over, Regency.

52. Defendants participated in the following pattern of racketeering activity in violation of 18 U.S.C. § 1962(b):

(a) Multiple instances of mail fraud in violation of 18 U.S.C. § 1341 as specifically set forth on Exhibit "A" attached hereto and incorporated herein.

(b) Multiple instances of wire fraud in violation of 18 U.S.C. § 1343 as specifically set forth on Exhibit "B" attached hereto and incorporated herein.

53. By reason of Defendants' violation of 18 U.S.C. § 1962(b), Plaintiffs, individually and as representatives of the Class, have been injured by suffering a cash-value dilution in the value of their shares in Regency in an amount to be determined by a jury, but believed to be in excess of $7.0 million. If the equitable relief requested herein is not granted, the cash-value dilution suffered by the Class is expected to exceed $25.2 million.

## COUNT II

## (RICO - VIOLATION OF 18 U.S.C. § 1962(c))

54. Plaintiffs, individually and as Class representatives, repeat the allegations of paragraphs 1 through 53, as if fully set forth herein.

55. Defendants Ponsoldt and Statesman were each associated with Regency and conducted or participated, directly or indirectly, in the conduct of Regency's affairs through a pattern of racketeering activity, including:

(a) Multiple instances of mail fraud in violation of 18 U.S.C. § 1341 as specifically set forth on Exhibit "A" attached hereto and incorporated herein.

(b) Multiple instances of wire fraud in violation of 18 U.S.C. § 1343 as specifically set forth on Exhibit "B" attached hereto and incorporated herein.

56. By reason of Defendants' violation of 18 U.S.C. § 1962(c), Plaintiffs, individually and as Class representatives, have been injured in an amount to be determined by a jury, but believed to be the value of Ponsoldt's excessive compensation ($3,751,924 million), the value of any shares of Regency's common stock and Series C Preferred Stock issued to Statesman and Ponsoldt (estimated currently to be $2,471,274, but expected to exceed $20,671,274 if the equitable relief requested herein is not granted), and any other benefit received by Ponsoldt and Statesman as a result of their participation in the predicate acts alleged herein.

## COUNT III

## (BREACH OF FIDUCIARY DUTY)

57. Plaintiffs, derivatively on behalf of Regency, repeat the allegations of paragraphs 1 through 46 as if fully set forth herein.

58. In 2001, Defendants Ponsoldt Jr., Baldinger, Carey, and Craffey acted with gross negligence and/or recklessly in failing to discharge their fiduciary duties as directors of Regency in allowing Ponsoldt and Statesman to implement their scheme to loot Regency as alleged herein.

59. The specific acts of their breach of fiduciary duty are outlined in Kelly's letters to the Regency Board of Directors dated September 9, 2001 and October 17, 2001 and specifically referenced in §§ 45 and 46 herein.

60. As a proximate result of Defendants' breaches of their fiduciary duty, Regency has been damaged by the amount of excessive compensation paid or accrued to Ponsoldt in 2001, including that portion of the $1.25 million received by Ponsoldt as a result of the divestiture of

OM-132371-5

20

Glas-Aire on November 6, 2001 representing compensation relating to periods prior to 2001 (estimated to be $1,993,558), the value of the common stock issued to Statesman pursuant to the fraudulently obtained option (estimated to be $2,471,274), and the decrease in the market value of the shares of common stock owned by the Class as a result of the reverse stock split (estimated to be $2.1 million). If the equitable relief requested herein is not granted, the damages suffered by the Class are expected to exceed $22.6 million.

## COUNT IV

### (BREACH OF FIDUCIARY DUTY)

61.   Plaintiffs, individually and as Class representatives, repeat the allegations of paragraphs 1 through 60 as if fully set forth herein.

62.   Defendants Ponsoldt and Statesman owed a fiduciary duty to the Class by virtue of their controlling voting interest in Regency, and Ponsoldt's status as Chairman of the Board, CEO and President of Regency.

63.   As alleged herein, Ponsoldt and Statesman acquired shares of Regency in exchange for fraudulently-inflated property and pursuant to fraudulent compensation schemes.

64.   As a proximate result of this breach of fiduciary duty, the Class suffered a dilution of the cash-value of their shares in Regency in an amount to be determined by a jury but believed to be in excess of $7.0 million. If the equitable relief requested herein is not granted, the cash-value dilution suffered by the Class is expected to exceed $25.2 million.

## COUNT V

### (DECLARATORY JUDGMENT)

65.   Plaintiffs, individually and as Class representatives, repeat the allegations of paragraphs 1 through 64 as if fully set forth herein.

66. By reason of the violations of RICO and the breach of fiduciary duty committed by Statesman and Ponsoldt, Plaintiffs seek a declaratory judgment that all stock, common and preferred, issued to Statesman, Ponsoldt, and any affiliated persons or entities, be declared void.

WHEREFORE, Plaintiffs pray for the following relief:

A. On Counts I, II and IV, equitable relief in the form of a preliminary and permanent injunction, enjoining Ponsoldt, Statesman and their affiliates from consummating their scheme to issue additional shares pursuant to fraudulent compensation agreements and option agreements and completely dilute the value of the common stock owned by the Class, and from performing any other acts injuring the Class or Regency.

B. On Counts I and II, against Ponsoldt and Statesman, a judgment for money damages in an amount to be determined by a jury, trebled, plus interest, costs and reasonable attorneys' fees.

C. On Count III, against Ponsoldt, Jr., Baldinger, Carey and Craffey, a judgment for money damages in an amount to be determined by a jury, plus interest, costs and reasonable attorneys' fees.

D. On Count IV, against Ponsoldt and Statesman a judgment for money damages, including punitive damages, in an amount to be determined by a jury, plus interest and costs.

E. On Count V, a declaratory judgment declaring all stock issued to Statesman, Ponsoldt, and any affiliated persons or entities void.

PLAINTIFFS DEMAND TRIAL BY JURY IN LINCOLN, NEBRASKA.

DATED this 2nd day of May, 2002.

                            EDWARD E. GATZ AND DONALD D.
GRAHAM, individually and on behalf of those similarly situated, and EDWARD E. GATZ AND DONALD D. GRAHAM, derivatively on behalf of Regency Affiliates, Inc., Plaintiffs

By: _____
Thomas H. Dahlk (#15371)
Michael S. Degan (#20373)
Daniel A. Morris (#16623)
Angela M. Lisec (#21745)
Joy A. Nesbitt (#22239)
BLACKWELL SANDERS PEPER MARTIN
13710 FNB Parkway, Suite 200
Omaha, NE 68154-8090
Telephone: (402) 964-5000
Facsimile: (402) 964-5050

ATTORNEYS FOR PLAINTIFFS

OM-132371-5                 23

## VERIFICATION

STATE OF NEBRASKA )
) ss.
COUNTY OF DOUGLAS )

I have read the foregoing Complaint and hereby verify its accuracy.

_____
Edward E. Gatz

*[Notary stamp: GENERAL NOTARY-State of Nebraska, JEANIE MILLER, My Comm. Exp. Nov. 15, 2003]*

OM-132371-5

24

## VERIFICATION

STATE OF FLORIDA     )
                     ) ss.
COUNTY OF COLLIER    )

I have read the foregoing Complaint and hereby verify its accuracy.

_____
Donald D. Graham

CHERYL A. BETTS
MY COMMISSION # DD 070877
EXPIRES: November 8, 2005
Bonded Thru Notary Public Underwriters